**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALEX JONES, | : | CIVIL ACTION NO. 18cv357 |
| 2812 Lakewood Dr. | : | |
| Columbus, OH 43231, | : | |
| | : | JUDGE |
| Plaintiff, | : | |
| | : | MAGISTRATE JUDGE |
| v. | : | |
| | : | **COMPLAINT** |
| THE KROGER CO., | : | |
| C/O Corporation Service Company. | : | |
| 50 West Broad St Ste 1330 | : | |
| Columbus, OH 43215, | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | : | |

## I.  Preliminary Statement

1. This action seeks, compensatory damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violation of Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.* committed by Defendant when it discriminated against Plaintiff by refusing to accommodate his disability or enter into a good faith interactive accommodation process, and by disciplining and threatening suspension for acts that Plaintiff cannot control because of his disability.

## II.  Jurisdiction and Venue

2. This Complaint brings a retaliation claim under Americans with Dishabilles Act 42 U.S.C. § 12112(a). , pursuant to a right-to-sue notice, dated March 21, 2018, from the Equal Employment Opportunity Commission (EEOC) and received by Mr. Jones less than 90 days ago.

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); and 1343 (civil rights).

1

    4.      Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202.

    5.      Compensatory damages may be awarded under Americans with Disabilities Act.

    6.      Costs and attorneys' fees may be awarded pursuant to Americans with Disabilities Act; and Fed. R. Civ. P. 54.

    7.      Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the events that gave rise to this Complaint took place in Franklin County, Ohio.

### III.   Parties

    8.      Plaintiff Alex Jones ("Mr. Jones") is a 33 year old resident of Franklin county who has Down Syndrome. Mr. Jones has had Down Syndrome since birth, and while able to perform many functions, he is hindered by this disability, in that he cannot drive for himself and suffers from other issues with time management. Despite his disability Mr. Jones is able to perform his job at a high level, and has not been disciplined based on his work product.

    9.      Defendant The Kroger Company ("Kroger" or "Defendant") is an Ohio Corporation for profit with its principal place of business in Cincinnati Ohio. Kroger is one of the largest grocery store operations in the nation, operates hundreds of stores including one at 55 West Schrock Road, and employs thousands of employees in the region.

### IV.   Facts

    10.    Mr. Jones began his career as an Associate/Front-End Clerk in September 2002 at another location and transferred to Defendant's current location at the Schrock Road store in March, 2007.

    11.    At the time of his hire, Mr. Jones informed Defendant that he had a developmental disability and it may affect his job performance.

12. When informed of his disability, Defendant was open to working with Mr. Jones to ensure that he would be successful while working for Kroger.

13. At the time of his hire, Mr. Jones informed Kroger that as a result of his disability that he was not legally allowed to obtain a Driver's License in Ohio, and would have to rely on alternate means of transportation to get to and from work each day.

14. Again, Kroger appeared willing to work with Mr. Jones to accommodate this disability and understood that his transportation would not always be reliable.

15. As part of the services that the Franklin County offers to those that have developmental disabilities, Mr. Jones uses the services of a job coach.

16. Mr. Jones introduced his job coach to Kroger managers at the time of his interview and hire, throughout his career with Kroger, the use of the job coach waned.

17. In order to go to and from work, Mr. Jones relies on the assistance of a private transportation company.

18. Mr. Jones, with mother Barbara Jones, works with the transportation company to set a schedule for Mr. Jones to be picked up before his shifts, and dropped off at his home after his shifts with Kroger.

19. When Mr. Jones receives his weekly schedule from Kroger, Ms. Jones works with the transportation company to set the pickup/drop off schedule for the upcoming week.

20. Mr. Jones routinely meets the transportation company bus at the agreed upon location and time.

21. Despite Mr. Jones routinely arriving at the agreed time and place, the transportation company does not always arrive when it is supposed to.

12. When informed of his disability, Defendant was open to working with Mr. Jones to ensure that he would be successful while working for Kroger.

13. At the time of his hire, Mr. Jones informed Kroger that as a result of his disability that he was not legally allowed to obtain a Driver's License in Ohio, and would have to rely on alternate means of transportation to get to and from work each day.

14. Again, Kroger appeared willing to work with Mr. Jones to accommodate this disability and understood that his transportation would not always be reliable.

15. As part of the services that the Franklin County offers to those that have developmental disabilities, Mr. Jones uses the services of a job coach.

16. Mr. Jones introduced his job coach to Kroger managers at the time of his interview and hire, throughout his career with Kroger, the use of the job coach waned.

17. In order to go to and from work, Mr. Jones relies on the assistance of a private transportation company.

18. Mr. Jones, with mother Barbara Jones, works with the transportation company to set a schedule for Mr. Jones to be picked up before his shifts, and dropped off at his home after his shifts with Kroger.

19. When Mr. Jones receives his weekly schedule from Kroger, Ms. Jones works with the transportation company to set the pickup/drop off schedule for the upcoming week.

20. Mr. Jones routinely meets the transportation company bus at the agreed upon location and time.

21. Despite Mr. Jones routinely arriving at the agreed time and place, the transportation company does not always arrive when it is supposed to.

22. When the transportation service is running late, Mr. Jones' ability to arrive on time for his scheduled shift is impacted.

23. For the first several years of his employment, Mr. Jones was able to work at Kroger without performance issue or other disciplinary issues.

24. During these first years, Kroger worked with Mr. Jones' job coach to ensure that he was receiving proper instruction and communication to be a successful employee. Over time, it was agreed that weekly visits from the job coach were no longer necessary.

25. Store managers change from time to time, and when Kroger brought in new managers to the Schrock Road store recently, the managers were unaware that Mr. Jones had an assigned job coach.

26. Despite fewer visits by his job coach, Mr. Jones still performed well at Kroger, and was well liked by co-workers and customers.

27. However, in late 2011, and early 2012 Mr. Jones began to accumulate discipline for tardiness.

28. Kroger has a points based attendance policy. If an employee is late more than a specified number of times in a 90-day period, the employee is subject to discipline up to and including termination.

29. Despite repeated requests by Mr. Jones, Defendant does not make any alteration, or accommodation to this policy.

30. In a 90 day period in 2011 and 2012, Mr. Jones accumulated seven tardy incidents and as a result was suspended without pay for three days.

31. Despite the fact that Mr. Jones worked for a decade without discipline for tardiness, Defendant did not undertake any investigation as to why Mr. Jones was all of the sudden tardy more often.

32. Kroger did not contact Mr. Jones' county-provided job coach to determine if anything could be done to assist Mr. Jones in arriving at work on time.

33. Through his and his family's efforts, Mr. Jones was able to arrive on time for his scheduled shift the vast majority of days between February 2012, and July 2016.

34. On July 6, 2016, Mr. Jones was issued a tardy point for arriving at his shift late. He was issued two additional points for tardiness on September 11, and 30, 2016. Mr. Jones was tardy for reasons outside of his control, because of his disability.

35. Defendant did not question Mr. Jones as to why he was tardy for his scheduled shift, or attempt to contact his county provided job coach to determine if there were strategies to help him arrive at work in a timelier manner.

36. Despite Defendant's reluctance to work with Mr. Jones, his parents reached out to Defendant's management in mid-September 2016, seeking a reasonable accommodation. Defendant did not immediately respond to this request.

37. Despite his outstanding request for accommodations, Mr. Jones received a written warning for excessive tardiness on October 7, 2016. A written warning is the lowest level discipline in Defendant's attendance policy.

38. After receiving the written warning, Mr. Jones' mother, Barbara Jones and sister, Kari Jones, had a telephone conference with Human Resources representative, Amy Dimitrovich, and his union steward Allison Appel to discuss the write up. During the

meeting, Mr. Jones' request for accommodation was reiterated, and he was told that Kroger would review the request.

39. Again, Kroger failed to respond to Mr. Jones request for accommodations and did not engage in the interactive accommodation process.

40. Shortly after Mr. Jones made this request, Defendant denied the request for accommodation stating that it "wouldn't be fair to give Alex special treatment.

41. On December 9, 2016, again due to circumstances relating to his disability, Mr. Jones was tardy to work. After this occurrence Shift Manager Chad Holycross called Mr. Jones' mother and stated that if Mr. Jones was tardy one more time he would be suspended for three days without pay.

42. Mrs. Jones protested that Mr. Jones' tardiness was based on his disability, and asked again for an accommodation. Mr. Holycross tersely responded that other employees with disabilities were able to arrive at work on time, and that Mr. Jones did not have an exceptional situation.

43. Mr. Holycross suggested that some employees with disabilities arrived at Kroger up to three hours prior to their scheduled shift to avoid being tardy.

44. During the conversation, Mr. Holycross did not discuss Mr. Jones' request for an accommodation.

45. On December 15, 2016, Mr. Jones was again tardy for work, but only by a few moments; he was not suspended.

46. After that tardy incident, Mr. Jones, and his mother have asked for accommodations and have been refused each time.

47. To date, Defendant has made no accommodations for Mr. Jones.

48. Kroger operates its Schrock Road location 7 days a week from 6 AM to 1 AM, and runs various shifts for its employees.

49. Mr. Jones' scheduled work shift is not the busiest shift for the store.

50. The Joneses have not been told that there has been an increase in customer complaints as a result of Mr. Jones' late arrivals at work.

51. Kroger has not articulated how offering Mr. Jones an accommodation would cause it an undue hardship.

## V. Cause of Action

### Violation of the Americans with Disabilities Act

52. Plaintiff incorporates all of the foregoing allegations as if fully stated herein.

53. By refusing to accommodate his disability, and continuing to discipline Plaintiff, and acting in reckless disregard for his rights, Defendant has willfully violated the Americans with Disabilities Act.

## VI . Prayer for Relief

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. declaration that Defendant has violated the Americans with Disabilities Act

B. equitable relief of expungement of his personnel file;

C. compensatory damages exceeding $25,000.00, punitive damages in an amount exceeding $25,000.00

D. prejudgment and postjudgment interest:

E. costs and attorneys' fees; and

F. such other relief as the Court deems fair and equitable.

Respectfully submitted

By: /s/ Samuel M. Schlein
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

By: /s/ Samuel M. Schlein
Samuel M. Schlein (0092194)

8